UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DONALD TERRY OBERLOH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO. 3:12-cv-174-JTM-CAN |
| CITY OF MISHAWAKA, *et al.*, | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Dismissal of a case with prejudice is an extreme sanction available to this Court under Rule 37 of the Federal Rules of Civil Procedure. Courts retain discretion to impose this "nuclear" option, but do so very rarely. Yet when a party's extraordinary and escalating misconduct prevents a just, speedy, and inexpensive resolution, and when other less extreme sanctions are ineffectual, the court is left with no other option but to dismiss the case. Plaintiff, Donald Terry Oberloh ("Oberloh"), has presented just that dilemma to this Court.

Oberloh, proceeding *pro se*, has intentionally thwarted the legitimate discovery attempts of the Defendants, the City of Mishawaka, Mayor Dave Wood, and City Planner Gary West (collectively "the City"). Initially, Oberloh's misconduct was limited to his refusal to provide complete discovery responses. Later he refused to comply with this Court's discovery orders, including an order requiring him to pay the City $9,509.50 in attorney fees and costs necessitated by his misconduct under Rule 37. He has misrepresented facts to defense counsel, and more seriously, to this Court. More recently, he engaged in inflammatory, and even arguably threatening, verbal attacks on certain Defendants and their counsel despite this Court's instruction not to do so. And finally, when his motions and arguments failed, he attacked the integrity of this Court.

Most frustratingly to the undersigned, Oberloh's misconduct has escalated, not diminished, despite efforts by the undersigned, through multiple written orders and three in-court hearings, to ensure that his claims were not prematurely discarded. The undersigned explained applicable procedure to Oberloh, listened to and fully considered his evidence and arguments on discovery issues, and employed the lesser sanction of an award of attorney fees to defendants to keep this case moving forward. Yet Oberloh ignored these efforts, leading the Court to conclude that his true goal in this lawsuit is to vex the defendants rather than seek redress for the alleged violations of Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitations Act of 1973 ("Rehabilitation Act") put forth in his complaint. Through his contumacious conduct, the undersigned has concluded that Oberloh has made a mockery of the judicial process and trivialized any claims he may have raised through this lawsuit. Therefore, for the reasons that follow and because all lesser sanctions have proven ineffectual in correcting Oberloh's misconduct, the undersigned recommends that all of Oberloh's claims be dismissed with prejudice pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) and 72(b)(1).

## I. PROCEDURAL HISTORY

On April 11, 2012, Oberloh initiated this action with a complaint that he amended on April 23, 2012. In his amended complaint, Oberloh raised claims of intentional discrimination and retaliation under the ADA and the Rehabilitation Act against the City. Oberloh alleged that architectural barriers made public facilities and programs inaccessible to him as a disabled person with mobility issues. On July 10, 2012, the Court issued a scheduling order pursuant to Fed. R. Civ. P. 16(b) to manage discovery in this case.

**A.	Discovery-Related Litigation Culminating in an Order Directing Oberloh to Pay $9,509.50 to the City**

**1.	First Discovery Order Directing Oberloh to Supplement Certain Written Discovery Responses**

As discovery progressed, discovery disputes regarding the proper scope of Oberloh's Rule 26 initial disclosures and responses to interrogatories and requests for production developed between the parties that could not be resolved without the Court's assistance. As a result, the Court held the first discovery-related hearing in this case on January 9, 2013, to address four discovery motions filed by both Oberloh and the City.[1] In response, the Court issued an order on January 14, 2013, that, among other things, (1) ordered Oberloh to supplement his responses to the City's interrogatories [Doc. No. 29] and to provide documents in response to the City's requests for production [Doc. No. 30] by January 31, 2013; (2) refused to grant attorney fees to the City assuming that Oberloh's previous discovery errors would not recur; and (3) advised Oberloh that this Court would enforce its own orders as well as the Federal Rules of Civil Procedure imposing sanctions under Rule 37 as necessary. *See* Doc. No. 51. Oberloh served amended interrogatory responses upon the City on January 23, 2013.[2] Oberloh produced the court-ordered documents late on March 6, 2013, along with additional amended answers to the interrogatories. *See* Doc. Nos. 54-4, 54-5, & 60-4 (duplicating 54-4).

---

[1] The Court also addressed a fifth motion, Oberloh's motion to appoint counsel, at the January 2013 hearing.

[2] The City attached Oberloh's January 23, 2013, amended interrogatory responses to subsequent court filings. *See* Doc. Nos. 54-1 & 55-1. Notably, Oberloh did not file those responses, or any of his other discovery requests or responses, with the Court at the time of service as required under N.D. Ind. L.R. 26-2(a)(2)(A). Oberloh did attach copies of his January 2013 amended interrogatory responses to subsequent court filings. *See* Doc. Nos. 61-2 & 108-1. Similarly, the parties attached other discovery responses to subsequent filings that will be noted as needed in textual citations going forward.

## 2. Second Discovery Order Directing Oberloh to Provide Unredacted DOJ Letter and Awarding Sanctions to the City

The City found Oberloh's amended interrogatory answers and his responses to the requests for production to be incomplete and deficient resulting in another round of three discovery motions and a second hearing on May 8, 2013. On May 13, 2013, the Court's resulting order, stated that Oberloh's amended interrogatory answers were "difficult to read and understand . . . . [and] inappropriate because they were far too lengthy without being responsive to the questions asked." Doc. No. 70 at 3. The order also noted the Court's objection "to Oberloh's insulting and overly personalized tone in his answers, which impugned Defendants' counsel and mocked the entire discovery process." *Id.* However, the Court refused to order Oberloh to amend his answers beyond his Rule 26 duty to supplement explaining that such an order would be fruitless in light of Oberloh's assertion that he had provided everything he had. *Id.* As to the City's requests for production, the Court ordered Oberloh to produce an unredacted version of a March 14, 2013, letter that he had written to the United States Department of Justice ("the DOJ letter"), as well as supplements to his other responses, by May 28, 2013. *Id.* at 4.

In the May 13th order, the Court also granted the City's motion of protection relieving them of any obligation to answer any unanswered or future interrogatories from Oberloh because the Court concluded that Oberloh's interrogatories amounted to "'incomprehensible prose' from which no one would ever be able to discern Oberloh's intended meaning." *Id.* at 6. Additionally, because the Court concluded that Oberloh's discovery answers were evasive and incomplete,
the Court sanctioned Oberloh by awarding reasonable expenses, including attorney fees, to the City incurred in litigating their motion to compel and motion for protection. Pursuant to Fed. R. Civ. P. 37(a)(5)(A), (C), *Id.* at 5, 7.

### 3. Final Sanctions Order Directing Oberloh to Pay the City $9,509.50

In compliance with the May 13th order, the City filed their bill of costs on May 28, 2013. Surprisingly, Oberloh neither filed an objection to the bill of costs nor objected to the Court's sanction order in any way before the deadline passed. However, on June 3, 2013, before the Court could issue its final sanctions order, the City filed another motion seeking additional sanctions against Oberloh alleging that he had manipulated evidence. [Doc. No. 76]. Specifically, the City contended that the unredacted version of the DOJ letter that Oberloh produced to comply with the May 13th order was materially different than the original redacted version deemed incomplete by the Court. In their motion, the City requested sanctions commensurate with Oberloh's conduct, up to and including dismissal of his claims.

The City then filed yet another motion for sanctions on July 10, 2013. [Doc. No. 86]. This motion similarly sought sanctions up to and including dismissal, but this time for spoliation of evidence. The City alleged that Oberloh refused to produce documentation related to his work with the National Association for ADA Compliant Businesses ("NAACB") in response to a request for production, but later admitted at his June 26, 2013, deposition that he had fairly recently thrown away his NAACB documents. On July 23, 2013, the City also filed a motion for protective order requesting that the Court protect them from having to respond to Oberloh's "Request for Documents From Defendant's Expert Witness Report" served to them on July 22, 2013, just one day before the July 23rd discovery deadline. [Doc. No. 88].

On July 26, 2013, Oberloh filed a motion seeking an extension of the deadline to respond to the City's motion for sanctions based on spoliation. [Doc. No. 89]. On August 19, 2013, Oberloh also filed two discovery-related motions. First, Oberloh filed a motion to compel production of documents [Doc. No. 92]; and second, Oberloh filed a motion to compel the City

and Midwest Reporting, the company for whom the court reporter at his June 25–26, 2013, deposition worked, to produce a free DVD transcript of his deposition. [Doc. No. 93]. Oberloh sought the DVD transcript after receiving a free copy of the written transcript from the court reporter and determining that he could not respond to the City's spoliation motion until he could view the DVD transcript to ensure that the written transcript properly reflected his testimony. In the motion, Oberloh expressed concern that he "may not have been of sound mind at the time of the 2nd day of testimony [in his deposition] due in part to either, adverse reaction to his maintenance medications and over the counter pain pills he ingested the night before and the day of the deposition." Doc. No. 93 at 1.

Both motions for sanctions and the three discovery-related motions remain pending. The flood of motions along with the possibility of dismissal of the case pursuant to Rule 37, persuaded the Court on August 22, 2013, to grant a motion by the City to stay all matters until the pending motions were resolved.

On August 26, 2013, finding the City's bill of costs and fees related to the motions at issue in the May hearing to be reasonable, the Court ordered Oberloh to pay the City $9,509.50 by September 26, 2013. [Doc. No. 98]. On August 28, 2013, Oberloh filed a document styled as "Reply" that, among other things, informed the Court that he was financially unable to pay the sanctions and expressed some confusion over the legal authority for an award before the end of the case. [Doc. No. 102]. In an order dated September 10, 2013, the undersigned construed Oberloh's Reply as a Rule 60(b) motion for reconsideration of the September 26th deadline, denied the motion, and refused to extend the payment deadline. [Doc. No. 106]. The Court also warned Oberloh that failure to pay the sanctions by the deadline could result in dismissal of the case with prejudice.

### B. Oberloh's Failure to Pay Sanctions and His Motion for a 3-Judge Panel

As of October 15, 2013, Oberloh had not paid the ordered sanctions to the City. Therefore, the Court issued an Order to Show Cause requiring Oberloh to provide either evidence that the sanctions were paid in full or reasons why this case should not be dismissed. [Doc. No. 107]. The Court once again warned Oberloh that failure to respond could result in dismissal. On October 25, 2013, in response to the Order to Show Cause, Oberloh filed a document styled "Oberloh's Request for Three Judge Panel Inquiry Into Any and All Alleged, Errors, Omissions, and Oversights by the Court During the Discovery Period of This Case as Part of the Oberloh's Response to the Court's Inquirey [sic] As to Why This Case Should Not Be Dismissed," ("Oberloh's Request"). [Doc. No. 108]. In his "Request," Oberloh did not provide any evidence of payment to the City. Instead, Oberloh asked the Court to set aside all sanctions against him and to refuse to dismiss this action with prejudice. Alternatively, Oberloh asked the Court to dismiss this case without prejudice so that Oberloh could re-file once he has retained counsel. In support of his "Request," Oberloh challenged the legality of the ordered sanctions alleging a pattern of oversight and improper rulings by the Court and a pattern of fraud and mistruths by defense counsel. Oberloh also contended that dismissal is a harsh penalty not supported by law.

On October 31, 2013, the City filed a response to Oberloh's "Request." In their response, Defendants reiterated their request for dismissal of all of Oberloh's claims as a sanction for Oberloh's continuing misconduct in litigating this case. Defendants categorized Oberloh's misconduct as (1) manipulation of evidence; (2) fraud on the Court; (3) refusal to receive, or accept service of, filings from Defendants; (4) intentionally false answers to discovery; and (5) defiance of Court instructions. Doc. No. 109 at 3–5. On November 7, 2013,

7

the City filed a Supplement to their Response attaching an email that the City's counsel, Eric Thomason, received directly from Oberloh on that same day. The City interpreted the email as a threat of physical violence against Mayor David Wood, a threat of ethics complaints against defense counsel, and a promise to withhold evidence from the City. [Doc. Nos. 110 & 100-1].

On November 15, 2013, the Court scheduled a hearing for November 26, 2013, to discuss all pending matters. On November 25, 2013, the day before the hearing, Oberloh filed his "Reply to Court's Order to Appear." In his "Reply," Oberloh objected to the hearing as "erroneous" and "vexatious," but noted that he would attend. Doc. No. 112 at 1. He alleged that the Court had denied him due process of law under the First, Fourth, Fifth, Sixth, Eighth, and Fifteenth Amendments to the United States Constitution. *Id.* at 2–5. He also directly named and accused the undersigned of "judicial misconduct" and "cronyism," while reiterating allegations of harassment and cronyism for purposes of blackmail against defense counsel. *Id.* at 2, 7.

### C. The November 26, 2013, In-Court Hearing

On November 26, 2013, the Court heard arguments regarding the dismissal of this case. In presenting evidence to support the City's request for dismissal, Thomason addressed the five categories of misconduct identified in the City's response to Oberloh's Request for a 3-Judge Panel. Thomason acknowledged that most of the evidence had already been presented to the Court through the City's filings, but elaborated on each of the categories as follows.

#### 1. Manipulation of Evidence

In support of the City's argument that Oberloh improperly manipulated evidence, Thomason discussed (1) the unredacted DOJ letter that was materially different than the redacted version Oberloh first produced; (2) the NAACB documents that Oberloh destroyed "fairly recently;" and (3) Oberloh's alleged second request for production of documents for which he

8

fabricated a mail receipt to show that defense counsel had received the request when in fact they only learned of the second request for production upon Oberloh's filing of a motion for protection. Doc. No. 109 at 3. In response, Oberloh acknowledged that the DOJ letters he produced were different but explained that he produced the unredacted version he did after doing everything he could to retrieve the original version from the DOJ. Similarly, Oberloh admitted that he destroyed the NAACB documents after this suit began. Oberloh defended his conduct by explaining that he destroyed the documents before the City asked for them and by challenging the City's interpretation of the words "fairly recently." However, when asked by the Court exactly when he destroyed the documents, Oberloh could not identify the exact date or provide any further detail regarding the timeline of the destruction. He did not specifically address the fabricated mail receipt at the hearing but reiterated his overarching argument that the Court has taken the City's statements at face value throughout this case even though it has not produced evidence to support its claims and has consistently twisted Oberloh's testimony.

### 2. Fraud Upon the Court

Arguing that Oberloh had committed fraud upon the Court, Thomason provided four examples. First, Thomas noted that Oberloh included false statements about his use of a walker and the date of his move to Mishawaka in his Amended Complaint, as evidenced by his own deposition testimony to the contrary. Second, Thomason explained that Oberloh told the Court, through a filing, that the City had unfairly changed the time of his continued deposition when in fact Oberloh had chosen the timing himself as evidenced by email communications between Oberloh and defense counsel. Third, Thomason referenced a letter addressed to the court reporter who handled Oberloh's deposition that Oberloh attached as an exhibit to a filing in this case to show that he had sent the letter when in fact, he had not done so as evidenced by the

9

court reporter's affidavit. *Id*. at 3–4.

Fourth, Thomason informed the Court that the Certificate of Service attached to Oberloh's most recent filing, his November 25th "Reply," was not attached to the version of the document that Oberloh had served on the City through him. In addition, Thomason noted that the Certificate of Service indicated that defense counsel had refused to meet Oberloh in their parking lot to receive the "Reply." As evidence of Oberloh's misrepresentation to the Court, Thomason called Georgina Jenkins, an attorney from his law firm, to the witness stand where she testified that she and Thomason had met Oberloh in their parking lot at 2:00 p.m. on November 25th to receive service of the "Reply."

In response, Oberloh admitted that Thomason and Jenkins had met him in the parking lot to receive service of the "Reply," but only after Oberloh had filed the "Reply" in person with the Court because his attempts at service before filing the document had not succeeded despite Oberloh's phone calls to the law firm. In response to the other allegations of misrepresentation to the Court, Oberloh stated that he saw no evidence to support the City's claims. He also challenged the references to his deposition testimony because he does not remember those particular statements, which is the reason he filed his pending motion to compel Midwest Reporting to provide him with a free DVD transcript of his deposition. Oberloh explained that he believes errors exist in the deposition transcript that he could verify by viewing the DVD.

On January 3, 2014, after the hearing but before the undersigned could issue this Report and Recommendation, the City filed a Post-Hearing Supplement in which it provided evidence that Oberloh also lied to the Court at the November hearing. Specifically, the City compared Oberloh's testimony at the hearing regarding his involvement in the NAACB and a message posted on Oberloh's Facebook page on December 31, 2013. At the hearing, Oberloh testified

that he had withdrawn from the NAACB as follows:

> **THE COURT**: When did you get rid of them [i.e., the NAACB documents at issue in the City's motion for sanctions based on spoliation of evidence]? When did you destroy them?
> **MR. OBERLOH**: I don't have the exact date. I know I got upset with this organization because they were wanting to sue everybody. I withdrew from that organization. . . .

Doc. No. 117-1 at 59–60. However, Oberloh's subsequent Facebook post reads in part:

> .. . . If your city has accepted federal funding, (they all have) or stimulus funds and your city's sidewalks or street lights are not 100% compliant with the ADA architectural guidelines, the government may demand the funds be returned. Penalties and interest may be levied. These types of claims run into hundreds of millions of dollars in surrendered funding. Who is going to ante up for that ? Taxpayers. Do not wait until your city raises your taxes to pay for its illegal activities. Free funding, enough to remediate your entire city, is available, if your city Council is pro-active. **Contact NAACBinc@aol.com, for more info for your presentation, or allow us to help you**, free of charge, as always). We all need to oversee our elected officials and ensure our municipalities spend our taxes wisely, and discontinue discriminating against those of our neighbors with different abilities.

Doc. No. 117-2 (emphasis added). As such, Oberloh's current Facebook post contradicts his in-court testimony by suggesting that he, as part of "us," is still working with the NAACB to assist individuals interested in making presentations to city councils regarding funding available to cities seeking to become ADA compliant. To date, Oberloh has not filed any response to the City's Post-Hearing Supplement.[3]

### 3. Refusing Service of the City's Filings

To show that Oberloh had refused service of filings from the City, Thomason explained that the United States Postal Service had returned unopened certified mail addressed to Oberloh

---

[3]The undersigned acknowledges that Oberloh may file a response to the City's Supplement as late as January 20, 2013, pursuant to N.D. Ind. L.R. 7-1(d)(2)(A) and Fed. R. Civ. P. 6(d). However, in light of all other evidence of misconduct in this case, Oberloh could make no response that would affect the undersigned's recommendation herein filed. Therefore, the undersigned has issued this Report and Recommendation before the response period expires.

on multiple occasions indicating that the mail was unclaimed and unable to forward despite multiple delivery attempts. *See* Doc. Nos. 100-1, 104-2, & 109-1 (envelopes addressed to Oberloh and returned to Defendants' counsel). Oberloh agreed that he had not received those certified mail documents. In defense, Oberloh claimed that the delivery failures were not his fault because his postal delivery person had not knocked on his door when attempting to deliver the mail. In addition, Oberloh contended that he could not pick them up at the Post Office himself as directed by the certified mail slip left with his other mail because of the architectural barriers at the Post Office.

### 4. Intentionally False Answers to Discovery

Thomason established Oberloh's intentionally false answers to discovery with reference to Oberloh's March 6, 2013, amended answers to interrogatories. One particularly crucial interrogatory required Oberloh to identify all the architectural barriers that allegedly violated the ADA and to explain the effect of each barrier on him personally.

Despite the scope of the question and its centrality to this lawsuit, Oberloh identified 148 architectural barriers at Mishawaka City Hall but only explained the effect of less than half of those. The City argued that Oberloh's descriptions of the effects of some the barriers could not be truthful and were flippant or bizarre. Doc. No. 114 at 44. For instance, Oberloh specifically explained the effect of faded ground signs for disability parking spaces at City Hall by stating: "Because I hate to see retards parking there because paint is faded and city wastes money on everything else but obeying the law." Doc. No. 54-4 at 11. As to the second floor of City Hall, Oberloh specifically explained the effect of five architectural barriers as follows:

> 67. No designated East end **safe harbor** area.
>     *Great, no cares if a gimp burns up huh?*

12

68. No safe harbor signage at designated space.
    *Ditto*
69. No instructions at safe harbor area.
    *Why get signs when there isn't one anyway?*
70. No safe harbor signs at east stairwell. (2)
    *Maybe there's one in the west stairs, yeah*
71. No safe harbor emergency lighting.
    *Good, dark is good for zombis and vampires*

Doc. No. 54-4 at 13 (italics added).

In his response to the City's motion to compel regarding these deficient interrogatory answers, Oberloh acknowledged that these were "tongue and cheek" answers and that he "fail[ed] to see the problem with offering tongue-in-cheek answers to ridiculous questions." Doc. No. 63 at 18. Remarkably Oberloh stood by his statement at the November 26th hearing. Although he agreed that the City's interest in learning about the barriers allegedly affecting him was central to this lawsuit, he argued that he had provided that information in his amended complaint and was not required to provide more. Doc. No. 114 at 45–46.

In addition, while arguing that his interrogatory answers were complete, Oberloh vehemently objected to the characterization that his interrogatory answers were flippant and chided defense counsel and the Court stating:

> After Mr. Thomason made this accusation that I was being flippant, I served the Court with an explanation. That explanation was, "Just because he doesn't believe that I've seen zombies and vampires" -- the question originally was, that he was asking about, on the architectural barrier was, I said -- and it's not even part of my complaint, was that -- why do I -- why do I think they need to have, as per the ADA, emergency lights on the second floor -- excuse me -- in an area that -- besides the signs and have an area at all where people with disabilities go to in the case of a fire. They cannot use the elevator. It says, "Do not use the elevator." There, by law, has to be a place designated and with proper signage and lit because of smoke.
>
> Now, for the Court or for even the attorney or anyone else to say they don't believe in something, and maybe society is making fun of zombies and vampires

13

in these recent television shows and movies, doesn't mean I don't believe in them, and I believe they exist, and I made that clear to the Court. It's not flippant. The question was flippant. The answers are, yeah, "Why am I answering this question at all?"

*Id.* at 47–48. The Court followed-up on this statement to clarify Oberloh's position.

> **THE COURT:** --you're saying that that was not flippant because you believe in zombies and vampires and they have something --
> **MR. OBERLOH:** Absolutely.
> **THE COURT:** You do believe in them?
> **MR. OBERLOH:** Yes, I do.
> **THE COURT:** What do they have to do with this lawsuit?
> **MR. OBERLOH:** Absolutely nothing. That's why half the things he asked me have nothing to do with this lawsuit, maybe three-fourths of all the things he's asked me--

*Id.* at 49. In sum, despite agreeing that the barriers at issue in the interrogatory cited by defense counsel were central to this case, Oberloh argued that he did not intentionally provide false discovery answers because his answers, including the zombies and vampires answer, were not flippant.

### 5. Defying the Court's Instructions to Refrain From Personal Attacks

The City, through Thomason, submitted that all of Oberloh's filings since the May 2013 hearing before the undersigned served as evidence of Oberloh's continued personal, inflammatory, unfounded, and unnecessary attacks on the City and defense counsel in defiance of the Court's instructions to refrain from personal attacks. Thomason read into the record part of Oberloh's November 7th email threatening Mayor David Wood as a most egregious example. Specifically, Thomason cited:

> Be advised! the next time your client Dave Woods, speeds in the city hall parking lot and looking me directly in the eyes, swears [sic] around the corner, placing me in undue danger while extricating my wheel chair from the rear of my truck, in a traffic route due to the city's failure to remediate obvious parking discrimination, I will be forced to take defensive action including, but not limited to the use of

deadly force to save myself from eminent death.

Doc. No. 110-1.

In response, Oberloh stated that he did not intend that email to be made public and challenged the City's interpretation of the email as a threat. Oberloh went on to explain that his comments against Thomason himself were not personal but based on his conduct in this case, including allegedly failing to present this Court with complete versions of Oberloh's interrogatory answers despite claiming to have done so. He also defended his statement in the November 7th email that he was withholding identification of rebuttal witnesses from the City claiming that he need not identify such witnesses until he brings them forward to testify.

## II. ANALYSIS

Under Fed. R. Civ. P. 37, the Court may sanction parties or their counsel for failure to obey a court order or to respond sufficiently to the full range of discovery requests. Among the sanctions available to the Court is dismissal of the action in whole or in part. Fed. R. Civ. P. 37(b)(2)(A)(5). Considered the nuclear option or an option of last resort, dismissal still can be the proper sanction in situations where no other sanctions will effectively deter further misconduct or remedy the harm already done. *Williams v. Adams*, 660 F.3d 263, 266 (7th Cir. 2011) (citing *Selletti v. Carey*, 173 F.3d 104, 112 n.12 (2d Cir. 1999); *Moon v. Newsome,* 863 F.2d 835, 838–39 (11th Cir. 1989)). Before imposing such a sanction, however, the court must find by clear and convincing evidence that the party against whom the sanction is imposed displayed willfulness, bad faith, or fault. *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 779 (7th Cir. 2013) (citing *Maynard v. Nygren,* 332 F.3d 462, 467–68 (7th Cir.2003)).

In determining whether to dismiss a case under Rule 37(b), a court must consider the full

procedural history as well as the current status of the case. *Patterson v. Coca-Cola Bottling Co.*, 852 F.2d 280, 284 (7th Cir. 1988). Courts may not automatically dismiss a case when a party fails to pay ordered sanctions. *Williams,* 660 F.3d at 265–66. However, failure to pay sanctions combined other instances of misconduct, including continuing untruthfulness to the court and ongoing discovery misconduct such as a serious lack of candor, destruction of evidence, and failure to comply with court-ordered production of specific information, could justify dismissal. *Maynard v. Nygren*, 372 F.3d 890, 892 (7th Cir. 2004); *Domanus v. Lewicki*, No. 08 C 4922, 2013 WL 140754, at *5–6 (Jan. 11, 2013 N.D. Ill.).

In this case, the City has shown by clear and convincing evidence that Oberloh has willfully engaged in bad faith, deception and misconduct. He has failed to pay previously ordered sanctions, ignored the Court's orders and directives, misled opposing counsel and the Court and most disturbingly his misconduct has increased and escalated. Initially, his misconduct warranted only the award of attorney fees and costs to the City as documented in this Court's order dated May 13, 2013.[4] However, Oberloh has not been deterred from further misconduct. In fact, his misconduct has only escalated in volume and substance. Through a series of no less than ten discovery motions and three court hearings, the City has consistently provided the Court with evidence—in the form of sworn affidavits, copies of written communications between the parties, Oberloh's own discovery responses, and even witness testimony at the November 26th hearing as highlighted above—of Oberloh's continuing and escalating behavior. The whole of Oberloh's filings and his testimony, especially at the

---

[4]Notably, the Court's May 13th order awarding reasonable costs, including attorney fees to the City, references the amended answers and interrogatories that Oberloh now claims the Court failed to consider. *Compare* Doc. No. 70, *with* Doc. No. 108.

November 26th hearing, provide the Court with ample evidence of Oberloh's misrepresentations of fact, his inappropriately antagonistic approach to the litigation of this case, and his personal attacks on the integrity of the defendants, defense counsel, and even the Court. Particularly revealing was his testimony regarding his interrogatory answers about "vampires, zombies, and retards" which he regarded as appropriate responses to the City's inquiries about the architectural barriers of central importance to the legal issues in this case.

Taken alone, any one of the City's allegations of misconduct, including manipulation of evidence, fraud on the Court, refusing service, intentionally false answers to discovery, and defiance of Court instructions and orders, may not be sufficient to justify dismissal in this case. However, taken together, they convincingly show that Oberloh has failed to follow this Court's rules of procedure and its orders. Moreover, Oberloh's conduct and testimony before the undersigned shows that he is not serious about using litigation for its proper purposes but rather is using this litigation as game or sport, to perhaps to advance his own political agenda.

As the result of Oberloh's behavior, the City was forced to spend considerable resources in defense of questionable claims.[5] Oberloh has also prejudiced defendants by (1) preventing them from gathering evidence relevant to Oberloh's claims and their defenses to which they are entitled under the discovery rules, and (2) inconsistently presenting his claims and related facts in discovery responses and testimony. Consequently, the City is not and cannot be adequately prepared to defend against Oberloh's claims through summary judgment or at trial.

---

[5]According to a recently published newspaper article citing Rebecca Miller, the South Bend City Controller, "th[is] lawsuit has cost the city about $200,000 in attorney fees so far from Barnes & Thornburg," Thomason's law firm. Joseph Dits, *Mishawaka disability lawsuit lingers*, S. BEND TRIB., Dec. 1, 2013, www.southbendtribune.com
/news/crime/article_575cad34-5a76-11e3-bb18-001a4bcf6878.html.

Additionally, Oberloh's misconduct is an abuse of the judicial system itself by requiring the Court to address frivolous issues such as his "vampires and zombies" answer to a legitimate discovery request. His misconduct and the numerous motions that ensued disproportionately and unnecessarily consumed this Court's time and limited resources. Even *pro se* parties must comply with the Federal Rules of Civil Procedure. *See Loubser v. United States*, 606 F. Supp. 2d 897, 909 (N.D. Ind. 2009). Oberloh has refused to do so and must face the consequences of his choices. Previous attempts by the Court to explain the Rules to Oberloh in person at two motion hearings and through written orders have not changed Oberloh's behavior. The Court's warnings about potential sanctions, including dismissal, in previous orders have similarly failed to effect any change in Oberloh's conduct. Even monetary sanctions have not deterred Oberloh. And more disturbingly, instead of correcting his misconduct, Oberloh has escalated it in recently making personal threats against the Mayor and in accusing the Court of judicial misconduct and cronyism. In light of the entirety of Oberloh's misconduct and his apparent unwillingness to modify his conduct, the Court is left with no alternative short of recommending the dismissal of his complaint, with prejudice, pursuant to Rule 37 and consistent with Rule 1 which requires this Court to construe and administer the Federal Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding."

### III. CONCLUSION

Because of Oberloh's willful, unabating, and escalating pattern of misconduct in the prosecution of this case, and his failure to comply with the previously ordered sanctions, the undersigned **RECOMMENDS** that the Court **DISMISS WITH PREJUDICE** Oberloh's complaint pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v).

**NOTICE IS HEREBY GIVEN** that within fourteen (14) days after being served with a copy of this recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). **FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED.**

Dated this 13th day of January, 2014.

                                                    S/Christopher A. Nuechterlein
                                                    Christopher A. Nuechterlein
                                                    United States Magistrate Judge